UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | Criminal Action |
| | : | No. 14-192 |
| **v.** | : | |
| | : | |
| **ROBBINS & MYERS BELGIUM,** | : | October 2, 2014 |
| **S.A.,** | : | 2:15 p.m. |
| | : | |
| | : | |
| | : | Washington, D.C. |
| **Defendant.** | : | |
| | : | |

...........................


**TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
BEFORE THE HONORABLE BERYL A. HOWELL,
UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the United States:          **John Witherspoon Borchert, Trial
                                 Attorney**
                                 U.S. ATTORNEY'S OFFICE
                                 555 Fourth Street, NW
                                 Suite 1100
                                 Washington, DC 20530
                                 (202) 252-7811
                                 Fax: 202-628-5116
                                 Email: John.borchert@usdoj.gov



For the Defendant:          **Tim Johnson, Esq.**
                            LOCKE LORD LLP
                            600 Travis Street
                            Suite 2800
                            Houston, TX 77002
                            (713) 226-1200
                            Fax: (713) 223-3717

**APPEAR ACNES:   Cont.**

Court Reporter:                    **Scott L. Wallace, RDR, CRR**
                                  Official Court Reporter
                                  Room 6503, U.S. Courthouse
                                  Washington, D.C. 20001
                                  202.354.3196
                                  scottlyn01@aol.com

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

<u>**AFTERNOON SESSION, OCTOBER 2, 2014**</u>

(2:07 p.m.)

     THE COURTROOM CLERK:  At or before the Court, Criminal Case Number 14-192, the *United States of America versus Robbins & Myers Belgium, S.A.*

     Counsel, please come forward and identify yourselves for the record.

     MR. BOCHERT:  Good afternoon, Your Honor.  John Borchert for the United States.

     THE COURT:  Good afternoon.

     MR. JOHNSON:  Good afternoon, Tim Johnson for --

     THE COURT REPORTER:  I'm sorry?

     THE COURT:  Just speak up at the lectern.  It's a little cumbersome for --

     MR. JOHNSON:  Tim Johnson for Robinson Myers Belgium.

     THE COURT:  All right.  Good afternoon, everyone.  I understand that you have a corporate representative here today.

     MR. JOHNSON:  Yes, Your Honor.

     THE COURT:  And who is that?

     MR. JOHNSON:  This is Mr. Craig Weinstock.

     THE COURT:  Okay.  And I didn't see submitted to me before this plea hearing any documentation from the board designating who was going to be the corporate representative and any proper designations, but I do see here papers on the bench with a written resolution.  And is this the documentation?

1      MR. JOHNSON:  Yes, Your Honor.  If you'll refer to page 2,

2  towards the bottom half of the page, it identifies me to be

3  authorized to act as counsel for the defendant and Mr. Weinstock

4  to act as their representative for purposes of this plea.  You

5  have two parts there.  One is a U.S. representative.  It was

6  notarized in the U.S.

7      The others are two foreign directors that were notarized

8  abroad.

9      THE COURT:  Okay.  Just, in the future, it would be

10 helpful if I'm able to see this before the hearing just to make

11 sure all the papers will be in order.

12     MR. JOHNSON:  Hopefully there will not be an "in the

13 future," but certainly we will take that advice.

14     THE COURT:  And what is the document with the beautiful

15 red ribbon on it?

16     MR. JOHNSON:  That's the one, Your Honor, that relates to

17 the two directors that are outside of the United States.  It's

18 signed in two parts on that beautiful document with the red

19 ribbon, and then the other unadorned document.

20     THE COURT:  Okay.  All right.  Now, before we proceed into

21 the proceeding -- and let me say for the record I will accept

22 Mr. Weinstock as the corporate representative here today, given

23 the fact that he is a corporate officer, the chief compliance

24 officer.  Do I understand that correctly?

25     MR. WEINSTOCK:  Yes, Your Honor.

1        THE COURT:  And I have the appropriate board of directors'

2  authorizations for him to represent the company in connection

3  with the plea.  But let me just say that my courtroom deputy said

4  to me that, before I came out, that the parties are expecting the

5  company to be sentenced today; is that correct?

6        MR. JOHNSON:  If the Court would indulge us, that would be

7  our intention, Your Honor.

8        THE COURT:  All right.  And is that the government's

9  position as well?

10        MR. BOCHERT:  Yes, Your Honor.  It's a (C) plea.

11        THE COURT:  Oh, I saw it was a (C) plea and it's

12  typically, absent circumstances where I have a defendant who has

13  already served more time than called for under a guideline

14  estimate, do I typically impose sentence on the same day as the

15  plea hearing, and even in some ways, even -- it's just as

16  important with an 11(c)(1)(C) plea to have a presentence

17  investigation report done so I have a fuller understanding of

18  whether or not the plea agreement is appropriate.

19        I typically, although I do accept (C) pleas -- there are

20  some judges in this Court who don't -- I do accept (C) pleas, but

21  I typically do it after I've had a fuller PSR.

22        Now, is there a reason why there shouldn't be a PSR in

23  this case?  Because I was a little surprised.  No one has alerted

24  me that the parties were expecting a sentencing today, and there

25  was nothing in the plea agreement or anything that waived the PSR

1    or had any discussion about whether a PSR should be waived.  I'll

2    hear from the government first.

3         MR. BOCHERT:  Well, Your Honor, Your Honor, the government

4    is comfortable proceeding to sentencing today.  The agreed upon

5    plea, as the Court I'm sure saw, involves five years of corporate

6    probation, along with a corporate compliance -- certain corporate

7    compliance provisions for Robbins & Myers Belgium.  It also

8    involves the -- a fine which, in the government's estimation, we

9    would submit, is a reasonable corporate fine in line with other

10   similar cases that have been litigated in this district.

11        Mr. Johnson has just pointed out to me, we do have a

12   sentencing guideline stipulation provision in our plea agreement.

13        THE COURT:  A stipulation being that the Sentencing

14   Guidelines don't apply.

15        MR. BOCHERT:  Exactly.

16        THE COURT:  And I know the specific guideline isn't

17   enumerated in Chapter 8 as a guideline applicable offense.  That

18   doesn't mean, necessarily, that Chapter 8 can't be used for some

19   guidance, though, you know, so -- but I appreciate that

20   stipulation.  That's perfectly appropriate and an accurate

21   reading of Chapter 8 of the guidelines.

22        MR. BOCHERT:  Sure.  Your Honor, suffice to say, from the

23   government's perspective, we're prepared to proceed to sentencing

24   today, if the Court desires.  But if the Court were -- we'll

25   defer to the Court.  If the Court wishes a PSR, we can certainly

1    proceed to sentencing at a later date.

2         THE COURT:  Okay.  Mr. Johnson, I'll hear from you.

3         MR. JOHNSON:  Your Honor, of course you'll have the final

4    word on this.  I have participated in similar pleas in the past.

5    I've had judges who don't require a corporate representative

6    here, so I think the decision is ultimately going to be made by

7    the Court.  The facts --

8         THE COURT:  And I appreciate you not assuming anything and

9    calling into chambers last week to inquire.  I think it's

10   generally the practice of courts, judges in this Court to require

11   a corporate representative.

12        MR. JOHNSON:  It would have been an awkward moment without

13   Mr. Weinstock.

14        THE COURT:  It would have been, it would have been, but

15   one we would have overcome.

16        MR. JOHNSON:  I'm sure we would have, on another day.

17        THE COURT:  Exactly.

18        MR. JOHNSON:  But I guess in some respects that's what

19   we're trying to avoid, having us here again on another day.

20        THE COURT:  Can I just explain to you why I think having a

21   PSR and a little bit fuller information would be helpful to me in

22   evaluating whether or not this is an appropriate plea?  Part of

23   the reason is, it's -- I understand that there's going to be a

24   five-year probationary period with, you know, a compliance

25   program, the company's had a chief compliance officer, and yet,

1   despite sort of clear direction that these stators were items not

2   to be shipped, it might be a violation of the law, it occurred on

3   four different occasions, so I -- the Factual Proffer is a little

4   bit scant, shall we say, about all the information, possible

5   miscommunications, other people.  The compliance program people

6   didn't discover it.  You know, those are things that are

7   appropriately not in a Factual Proffer, which is a public

8   document, but might be more fully developed and would give me

9   some assurances that steps have already been taken and are

10  appropriately disclosed in a PSR, which is confidential.

11          MR. JOHNSON:  The only thing --

12          THE COURT:  So, I do have questions about what happened

13  here, and the PSR is usually very helpful to me in being

14  comfortable that appropriate steps are taken.

15          MR. JOHNSON:  The only thing I can add to that is that

16  these events, as the Court has pointed out, occurred -- the

17  latest event was in the fall of 2006, which was some eight years

18  ago.

19          THE COURT:  Right, right.

20          MR. JOHNSON:  The reason Mr. Weinstock is here today is

21  he's the chief compliance officer, vice president/chief

22  compliance officer of National Oilwell Varco, Incorporated, which

23  acquired Robbins & Myers 18 months ago, which was the direct

24  owner of Robbins & Myers Belgium.  So, what's happened,

25  essentially, is that the Robbins & Myers Belgium entity has been

1    folded into an entity with a more robust compliance program, and

2    that's the only point that I wanted to address.  It might not be

3    clearly stated in what you've got before you, Your Honor.

4    Certainly, I know that this is a burden on the probation office,

5    but I also realize that for me to stand here and say we're trying

6    to lessen their burden, I don't know that we're going to do that

7    much by having them prepare one less presentence report this

8    year.  But with those facts before the Court and with the

9    five-year probationary period that we stipulated to in the plea

10   agreement, we thought that this might be an appropriate case to

11   waive the presentence report and to proceed to sentencing today.

12        THE COURT:  All right.  So, let me -- so, what you're

13   saying makes sense.  Is it in the papers that the company that

14   actually -- that Robbins & Myers Belgium was a -- I see it's a

15   company that's based in Belgium.  Was it a company that was

16   recently acquired by the current oil company with a more robust

17   compliance program?

18        MR. JOHNSON:  I don't believe you'll find that in the

19   papers, Your Honor.  Certainly that's something within the

20   knowledge of the parties as we were negotiating this plea

21   agreement.

22        THE COURT:  Right.  That's very helpful information that

23   changes somewhat some of the concerns I had and hoped to have

24   fleshed out more in a PSR and would have been helpful in

25   evaluating this.  All right.  Well, let me just -- so, is the

1    current owner of RM -- I'm going to call it RMB.  Did it purchase

2    all of RMB in its entirety?

3          MR. JOHNSON:  Yes, Your Honor.

4          THE COURT:  And was this violation, this criminal offense

5    uncovered after the sale?

6          MR. JOHNSON:  No.  It was --

7          THE COURT:  It was ongoing?

8          MR. JOHNSON:  It was discovered well in advance of the

9    sale.

10          THE COURT:  Okay.  And are the individuals who, despite

11   knowing that shipping of the stators was, you know, to

12   companies -- to a company in Syria on these four different dates,

13   are they still employed?

14          MR. JOHNSON:  It's my understanding that they're not, but

15   I'm uncomfortable answering the question.  That's something

16   Mr. Weinstock certainly can help me with.

17          THE COURT:  Mr. Weinstock, please come forward to the

18   podium.  You're going to have to be up here anyway.

19          MR. WEINSTOCK:  Good afternoon.  At the time that National

20   Oilwell Varco entered into an agreement to purchase Robbins &

21   Myers, the ultimate parent of Robbins & Myers Belgium, different

22   counsel represented Robbins & Myers, different counsel

23   represented NOV.  What has been --

24          THE COURT:  NOV?

25          MR. WEINSTOCK:  National Oilwell Varco, the acquirer.

1          THE COURT:  Okay.

2          MR. WEINSTOCK:  That's the company that employs me.

3          THE COURT:  NOV, I like that.  I'm going to remember that.

4          MR. WEINSTOCK:  And we refer to it as RMB, just as you

5     were doing it.

6          THE COURT:  Perfect.  We're all communicating.  That's a

7     good start.

8          MR. JOHNSON:  And they're the parent.  What I was told by

9     outside counsel for Robbins & Myers, R & M, which conducted the

10    investigation as part of my due diligence, was that employees who

11    were involved were no longer with RMB.  I didn't get their

12    specific names, but that representation was made to me.

13         I can tell the Court that -- you were concerned about a

14    compliance program being in place for RMB, as compared to what it

15    is today.  It's a legitimate concern, but R & M was a company

16    that was maybe less than 10 percent of the size of NOV, and when

17    we entered into the plea negotiations, we talked with

18    Mr. Borchert and accurately described it as a small company

19    compliance program, to which he responded, "it doesn't sound like

20    much," which some could fairly say it wasn't enough.  Today

21    National Oil Varco, NOV, has a compliance program that --

22         THE COURT:  Although it's hard to say, even if you have

23    the best compliance program in the world, if people have to be

24    told something's a violation of the law and they do it

25    nonetheless, what a compliance program of any kind would do.

1          MR. JOHNSON:  There are no guarantees.

2          THE COURT:  They are not guarantees, that's for sure.

3          MR. WEINSTOCK:  The current compliance group at NOV

4     consists of about 12 lawyers, three of them -- one in Asia -- one

5     in Asia, one in the Middle East, one in -- one in Brazil, one in

6     Russia, one in Asia.  We have compliance people in the Middle

7     East.  We have probably all tolled over 150 compliance people at

8     the company.  So the nature of the program is substantially

9     different.  The emphasis and focus of the company is very serious

10    on compliance, and the company spent tens of millions of dollars

11    over the last five years implementing its compliance program,

12    which is more robust now than it was even five years ago.

13         So I would say that our compliance program, which I didn't

14    form but which I was a beneficiary of the hard work of people

15    before me, is at the front end of the compliance marketplace.  So

16    I understand the Court's concern, and if you want us to come

17    back, of course we will, but I can tell you that the compliance

18    program that's in place today compared to the time of the events

19    at issue just is apples and oranges.

20         THE COURT:  All right.  Well, this is why it's always very

21    helpful to have a corporate representative, because you just

22    gotten yourself a sentencing on the same day as the plea, because

23    you have addressed some of the -- what I viewed as some of the

24    gaps in the Factual Proffer -- no criticism of those gaps, but

25    they're usually filled in by a PSR -- so that I can have a fuller

1    appreciation of whether the parties' agreed upon sentence in an

2    11(c)(1)(C) plea is an appropriate one that I can agree to.

3         And based on your representations, your understanding of

4    the people involved not being there, the fact that there is a

5    much more robust compliance program in place now that seems well

6    resourced, I will accept the plea and go forward to sentencing

7    today.

8         MR. WEINSTOCK:  Thank you, Your Honor.

9         THE COURT:  All right.  Now we've put a little bit of the

10   cart before the horse, sorry about that, but now I have to go

11   through all the Rule 32 requirements, so you can just stay right

12   where you are, Mr. Weinstock.

13        Okay.  As I've already said, I do have the documentation

14   that confirms that Mr. Weinstock -- Mr. Weinstock, remind me of

15   your first name.

16        MR. WEINSTOCK:  Craig.

17        THE COURT:  Craig.

18        MR. WEINSTOCK:  Yes, ma'am.

19        THE COURT:  Okay -- that Mr. Weinstock is a duly

20   authorized representative by the company's board of directors to

21   answer questions and enter a plea on behalf of Robbins & Myers

22   Belgium, which I will call throughout these plea hearings RMB.

23        All right.  I'm first going to have my courtroom deputy

24   administer the oath to you, Mr. Weinstock, because you're going

25   to be answering under oath on behalf of the company.

1          MR. WEINSTOCK:  Yes, ma'am.

2          THE COURT:  Please proceed.

3          (Thereupon, the representative, Mr. Weinstock, was sworn.)

4          THE COURT:  Mr. Weinstock, you're now under oath.  Do you

5     understand that if you do not answer my questions truthfully

6     about the company, you could be prosecuted for perjury or making

7     a false statement, and any false answers that you give to me

8     today could be used against the company and you in that

9     prosecution?  Do you understand that?

10         MR. WEINSTOCK:  Yes, ma'am.

11         THE COURT:  Now, have you received a copy of the

12    information that's been filed against RMB?

13         MR. WEINSTOCK:  I have.

14         THE COURT:  And did RMB have a full opportunity to review

15    those charges with counsel?

16         MR. WEINSTOCK:  Yes, it has.

17         THE COURT:  All right.  Is RMB completely satisfied with

18    the services of its lawyer in this case?

19         MR. WEINSTOCK:  Yes, it is.

20         THE COURT:  All right.  And does RMB think that it has had

21    plenty of time the talk to counsel about the charges, about the

22    plea agreement, and all other matters associated with the case?

23         MR. WEINSTOCK:  Yes, ma'am.

24         THE COURT:  All right.  Now, I'm going to go through a

25    serious of Constitutional Rights that RMB has and ask you if you

1    understand them and if RMB waives them, and if at any time you

2    don't understand, because this is very technical -- Are you a

3    lawyer?

4             MR. WEINSTOCK:  I am, ma'am.

5             THE COURT:  You are?  Okay, good, not all compliance

6    officers are.  But if you have any question about it, I'll repeat

7    the question or you have able counsel here who can help you

8    understand it.

9             All right.  Do you understand that RMB has a right to a

10   grand jury indictment rather than pleading to an information

11   that's been filed by the government?

12            MR. WEINSTOCK:  I do.

13            THE COURT:  And does RMB give up that right?

14            MR. WEINSTOCK:  It does.

15            THE COURT:  And I see here a waiver of indictment that has

16   been signed by you and Mr. Johnson; is that correct?  I'm showing

17   you, for purposes of the record.

18            MR. WEINSTOCK:  I did sign it, yes.

19            THE COURT:  Okay.  I'm going to execute that as well.

20   Does RMB understand it has a right to plead not guilty and have a

21   trial in the case and have citizens from the District of Columbia

22   hear the government's evidence and decide whether or not the

23   government has proven its case beyond a reasonable doubt?

24            MR. WEINSTOCK:  Yes.

25            THE COURT:  And does the company understand that it has a

1    right to be represented by counsel during that trial?

2         MR. WEINSTOCK:  Yes.

3         THE COURT:  And does RMB appreciate that it would have the

4    right through its lawyer to confront and cross-examine any

5    witnesses against the company that are proffered by the

6    government, that RMB would also have the right to present its own

7    witnesses and subpoena witnesses to appear on its behalf to offer

8    testimony?

9         MR. WEINSTOCK:  Yes.

10        THE COURT:  And does the company also understand that

11   under the law that it's presumed to be innocent, and it would be

12   the government's burden to prove the company's guilt beyond a

13   reasonable doubt?

14        MR. WEINSTOCK:  Yes, ma'am.

15        THE COURT:  Does the company also understand that it would

16   have the right to appeal a conviction to the Court of Appeals if

17   there were a conviction?

18        MR. WEINSTOCK:  Yes.

19        THE COURT:  And by pleading guilty, the company is giving

20   up its right to appeal it's conviction of guilt, as well as its

21   right to appeal the sentence, if sentenced in accordance with the

22   terms of the plea agreement?

23        MR. WEINSTOCK:  Yes, ma'am.

24        THE COURT:  And if the Court accepts a plea agreement and

25   the company's plea, the company will give up all of the rights

1    that I've just explained and there will be no trial, and does the

2    company understand that?

3         MR. WEINSTOCK:  Yes, ma'am.

4         THE COURT:  All right.  I see that there's a waiver of

5    trial by jury, and, for the record, I am showing you this

6    document.  Is that your signature on it?

7         MR. WEINSTOCK:  It is.

8         THE COURT:  All right.  I'm going to execute that as well.

9    All right.  I have received the Statement of Offense and the

10   Factual Proffer in support of guilty plea that the government has

11   provided, and does this fully or truly and accurately describe

12   what the company did in this case?

13        MR. WEINSTOCK:  Based on the information that I've been

14   provided, it does.

15        THE COURT:  And did the company, in fact, on four separate

16   occasions between August 2006 and October 2006 willfully export

17   and reexport and cause to be exported and reexported in the

18   District of Columbia and elsewhere stator equipment to a company

19   in Syria knowing that that equipment, the stators were destined

20   for Syria without having obtained an export license from the U.S.

21   Department of Commerce located within the District of Columbia as

22   charged in the information?

23        MR. WEINSTOCK:  Based on the information provided to me,

24   that is accurate.

25        THE COURT:  All right.  Now, do you have any question

1   about the elements of the charge in this case that make up the

2   crime?

3        MR. WEINSTOCK:  I have no questions about the elements.

4        THE COURT:  And did the company fully understand the

5   charges against it?

6        MR. WEINSTOCK:  I believe we do.

7        THE COURT:  All right.  All right.  I have -- and does the

8   company -- has the company had adequate time to review the terms

9   of the plea agreement in the case?

10        MR. WEINSTOCK:  Yes, ma'am.

11        THE COURT:  And did the company have any questions about

12   any of the terms in the plea agreement?

13        MR. WEINSTOCK:  No, ma'am.

14        THE COURT:  I will accept, as I stated at the outset of

15   the hearing, I will accept the plea agreement, although, as I

16   said, I typically do this after a PSR.  But given the additional

17   information that's been provided to me by Mr. Weinstock at the

18   hearing, I'm satisfied with the terms of the proposed sentence in

19   the case.

20        Now, I do have to tell you, despite the fact that it's

21   laid out in the plea agreement, it's a very important part of the

22   sentencing hearing -- plea hearing to describe exactly what the

23   penalties are that the company faces.

24        Now, under 50 U.S.C. Section 1705(c), the company faces a

25   maximum criminal penalty of $1 million on each count, which is a

1     total of $4 million.  It also faces -- or a $500,000 fine on each

2     count under 18 U.S.C. 3571(c)(3), which would total $2 million,

3     or twice the gross gain to the defendant or loss to another

4     person from the offense.  Do you understand that?

5          MR. WEINSTOCK:  Yes, ma'am.

6          THE COURT:  And do you also understand that the company

7     faces a probationary term of up to five years?

8          MR. WEINSTOCK:  Yes.

9          THE COURT:  And a special assessment of up to $400 on each

10    count, which totals $1,600?

11         MR. WEINSTOCK:  Yes.

12         THE COURT:  All right.  And in addition -- let me -- just

13    stay where you are.  If I can ask the government attorney, is

14    there any identifiable victim in this case?

15         MR. BOCHERT:  Your Honor, I actually looked at that today.

16    There is not a victim.  There is no pecuniary loss to a victim.

17    I think arguably that the victim would have to be the Department

18    of Commerce that didn't receive the license or the department

19    that was denied the opportunity to grant the license.

20         THE COURT:  I just wanted to make sure that in terms of

21    restitution here, to the extent that I understand the offense

22    conduct, that there was no identifiable victim.

23         All right.  Now, even though the Sentencing Guidelines

24    under Chapter 8 for organizational guidelines don't apply to this

25    offense, I am also, in addition to considering the statutory

1   maximum penalties and minimums, I also have to consider the

2   factors under 18 U.S.C. 3553(a), which requires judges to

3   consider the nature and circumstances of the offense, the history

4   and characteristics of the defendant company, the need for the

5   sentence imposed to reflect the seriousness of the offense,

6   protect the public from further crimes by the defendant, the

7   kinds of sentences available, and the need to provide restitution

8   to any victims of the offense, which is not the case here, there

9   are no unidentifiable victims, do you understand that I also have

10  to consider those statutory factors?

11       MR. WEINSTOCK:  Yes, ma'am.

12       THE COURT:  Now, has anyone, including the investigating

13  agents or the prosecutor, promised or suggested to the company

14  that merely because the company is pleading guilty, the Court

15  would impose a lighter sentence?

16       MR. WEINSTOCK:  No, ma'am.

17       THE COURT:  And has anyone forced, threatened, or coerced

18  the company in any way into entering a plea of guilty?

19       MR. WEINSTOCK:  No.

20       THE COURT:  Has anyone made any promises to RMB in

21  connection with the company's guilty plea, other than those

22  contained in the plea letter as stated in open court about what

23  the sentence will be?

24       MR. WEINSTOCK:  No.

25       THE COURT:  And has anybody threatened RMB in any way into

1    entering a plea of guilty?

2         MR. WEINSTOCK:  No, ma'am.

3         THE COURT:  And is the company entering the plea of guilty

4    voluntarily and of its own free will because the company is

5    guilty and for no other reason?

6         MR. WEINSTOCK:  Yes.

7         THE COURT:  How does the company now plead to the charges

8    in Counts 1 thru 4 of the information?

9         MR. WEINSTOCK:  Guilty.

10        THE COURT:  All right.  I'm satisfied that the company,

11   Defendant Robbins & Myers Belgium, S.A., is represented here

12   today by an officer of the company who's duly authorized by the

13   board of directors to answer questions on behalf of the company

14   and enter a plea of guilty to the charges against the company,

15   and I'm also satisfied that the company understands the nature of

16   the charges and the consequences of the plea, and the plea of

17   guilty is a knowing and voluntary plea, and the company is acting

18   voluntarily and agreeing to plead guilty, and I also find there's

19   an adequate factual basis for the plea, and, therefore, I accept

20   the plea, and I also accept the terms of the plea agreement and

21   will now proceed to sentencing.

22        Does anybody want to say anything?  Yes, Mr. Weinstock.

23        MR. WEINSTOCK:  Technically, I'm an officer of the

24   ultimate parent company, not of RMB, but I'm authorized by the

25   board of RMB to be here and to enter the plea.

1      THE COURT:  Thank you for that clarification about your

2  role.  So now let's proceed to sentencing.  And would -- I'll

3  hear -- typically -- Let me just tell you how I'm going to

4  proceed for the sentencing part of this hearing, as I'm required

5  to do.  I will give both sides an opportunity to speak, and then

6  I will explain, following my consideration of the requisite

7  factors under 3553(a), my reason for accepting the agreed upon

8  terms and impose sentence.  So you may be seated.  The

9  government -- you can take a load off your feet, and I'll hear

10  from the government.

11      MR. BOCHERT:  Thank you.  I think there's probably -- if

12  you look at the 3553 factors, I think there's three or four of

13  them that most directly apply and justify the sentence in this

14  case.

15      Certainly, looking to the nature and circumstances and the

16  seriousness of the offense, this case does involve a company

17  doing business with Syria, a state sponsor of terrorism, one that

18  we know has been supporting Hesbala in conjunction with Iran

19  since the 1980s, and in this situation the company chose to, as

20  happens unfortunately in many of these sanctions cases,

21  prioritize profit, albeit meager, over compliance with the law.

22  Under those circumstances, the proposed sentence of the five

23  years of corporate probation, compliance enhancements, and the

24  fine seem appropriate.  For those same reasons, the $1 million

25  fine that we've recommended as a sentence in this case and have

1    agreed to with the defendant is more than 30 times the value of

2    the actual forfeiture in this case, which we believe should

3    function as an effective deterrent and deter corporations from

4    similarly violating sanctions.

5          I also note, Your Honor, on the subject of sentencing,

6    potential sentencing disparity, this case is in many respects

7    similar to the PPG Paints Trading Shanghai case that Judge

8    Collyer had in December of 2010.  In that case, the defendant

9    that had exported some high performance paint coatings to

10   Pakistan for use in a nuclear reactor in violation of the same

11   statute received a $2 million fine in connection with roughly

12   twice the amount of exported paint coatings, so $1 million in

13   this case certainly seems in line with prior sentences in this

14   court.  That's all, Your Honor.

15         THE COURT:  Thank you.  Mr. Johnson, do you want to speak

16   as to the appropriateness of the sentence that you agreed upon?

17         MR. JOHNSON:  Thank you, Your Honor.  As you pointed out

18   earlier, the range and possible penalties for this violation

19   would be anywhere from twice the pecuniary gain to the defendant

20   to as much as a million dollars per count or $4 million.  I point

21   out to the Court that twice the monetary or pecuniary gain,

22   assuming 100 percent markup, would be roughly what we've agreed

23   to give in the monetary judgment in this case, which was the

24   total amount of sales of $31,716.36.  I don't know that I can

25   speak with as much clarity as Mr. Borchert has as to the current

1   geopolitical situation between the United States and Syria, but

2   suffice it to say, it's very clear that we were prohibited from

3   trading with Syria at all at the time that these violations

4   occurred, and I think the Court somewhat hinted at this earlier.

5   No matter how good a compliance program someone has, which is

6   something that the guidelines would have allowed you to consider

7   in terms of what was in place, which we would say and admit and

8   stipulate probably, was lax in comparison to what is in

9   comparison now by virtue of NOV having acquired Robbins & Myers

10  Belgium's parent, which was Robbins & Myers itself.

11       So, to echo what Mr. Borchert has said, I think that the

12  negotiated penalty and fine, probation, and the monetary judgment

13  in this case is appropriate.

14       THE COURT:  Thank you.

15       MR. JOHNSON:  Thank you.

16       THE COURT:  All right.  I am going to impose sentence now,

17  but you can stay where you are, since this is a company and not

18  an individual.  I typically have individuals up.  And let me just

19  explain and go through the 3553(a) factors, as I'm required to

20  do, to explain the sentence that I am going to impose and why

21  I've accepted the agreed upon sentence in the case.

22       In terms of the nature and circumstance of the offense, it

23  is a very serious offense, violating the export control

24  regulations, particularly for a country like Syria, which is a

25  state sponsor of terrorism, and I'm not sure exactly what the

1    situation was in 2006 when this stator equipment was sold, this

2    stator equipment was sold to Syria, but I think that the status

3    of that government has been unchanged for quite some time, so the

4    seriousness of the offense is significant.

5         The history and characteristics of the defendant, as

6    revealed during the course of the plea hearing, is that the

7    company that engaged in this offense conduct has now been

8    purchased by a much bigger company with a much more robust

9    compliance program, so that goes a far way to addressing some of

10   the other considerations that I have to give under 3553(a), which

11   is protecting the public from future crimes by this particular

12   company, and also the fact that this company has entered a plea

13   of guilty is a significant -- provides a significant deterrent

14   effect to criminal conduct, both by this company and other

15   companies standing alone.

16        In terms of the kinds of sentences available because it's

17   a -- which is one of the factors I have to consider, this is

18   clearly a company, so only a fine kind of penalty is available.

19   The Sentencing Guidelines, which I'm also required to consider,

20   does not provide in Chapter 8 the organizational guidelines for

21   guideline references for this particular offense conduct by a

22   company.

23        And in terms of the need to provide restitution, there are

24   no identifiable victims of the offense.

25        And in terms of the need to avoid unwarranted sentencing

1    disparities among defendants with similar records found guilty of

2    similar conduct, I think that -- I have not done a full analysis,

3    although the comparable companies with similar loss amounts,

4    since I wasn't prepared to go forward with sentencing today, but

5    based on the representation by the government counsel and the low

6    amount of money, approximately $31,000, which is the total amount

7    of the sales that were at issue in the criminal conduct, I think

8    that the sentence agreed upon and reflected in the plea agreement

9    is appropriate.

10        So, for all of those reasons, the Court now imposes the

11   following sentence on Robbins & Myers Belgium, S.A.

12        RMB shall pay the sum of $1 million in a criminal fine.

13   You will also forfeit the amount of $31,716.36, and you will also

14   pay a special assessment totaling $1600.  The company shall not

15   commit any federal, state, or local crimes during a five-year

16   term of probation, which will also be imposed.  The company shall

17   also implement and maintain an effective corporate export

18   compliance policy with controls or procedures that fully comport

19   with the procedures set forth in the United States Sentencing

20   Guidelines manual at Section 8B21, and including a number of

21   minimum requirements that are set out in the plea agreement at

22   pages 3 through 5.

23        Is there anything further regarding either the plea or the

24   sentencing from the government?

25        MR. BOCHERT:  Nothing from the government.

1          THE COURT:  Mr. Johnson.

2          MR. JOHNSON:  Your Honor.

3          THE COURT:  Could you come forward.

4          MR. JOHNSON:  You imposed a fine of $1 million.  For

5     clarity of the record, I just wanted to ascertain that it was

6     intended to be a $250,000 fine for each of the four counts.

7          THE COURT:  Thank you for that clarification, and that is

8     exactly what I meant.

9          MR. JOHNSON:  Thank you, Your Honor.

10          THE COURT:  All right.  If there is nothing further, you

11     are all excused.

12          MR. BOCHERT:  Thank you, Your Honor.

13          MR. JOHNSON:  Thank you.

14          THE COURT:  Thank you.

15          (Proceedings adjourned at 2:46 p.m.)

16                        **C E R T I F I C A T E**

17

18                    I, Scott L. Wallace, RDR-CRR, certify that
          the foregoing is a correct transcript from the record of
19          proceedings in the above-entitled matter.

20

21     _____        _____
          **Scott L. Wallace, RDR, CRR**             **Date**
22          **Official Court Reporter**

23

24

25